**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Nick Xenos, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>Maxwell & Morgan, P.C., et al.<br><br>Defendants. | Case No. 1:17-cv-02848<br><br>**AMENDED COMPLAINT FOR DAMAGES UNDER THE FAIR DEBT COLLECTON PRACTICES ACT, NEGLIGENCE, AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**<br><br>**Jury Demand Requested** |

Now come Plaintiffs, by and through their attorneys, and respectfully submit their Amended Complaint. The Amended Complaint is intended to correct the legal name of Plaintiff Nick Xenos, and to include additional counts with supporting allegations. For their Amended Complaint, Plaintiffs state as follows:

**<u>JURISDICTION AND VENUE</u>**

1- This court has jurisdiction pursuant to 28 U.S.C. §§1331, 1337, 1367; and 15 U.S.C. §1692k(d).

2- Venue is proper because a substantial part of the events giving rise to this claim occurred in this District.

**<u>PARTIES</u>**

1- Plaintiffs incurred an obligation to pay homeowners association fees to Barcelona Condominium Association (the ñDebtò).

2- The Debt qualifies as a ñconsumer debtò under the FDCPA since it was incurred primarily for personal and household purposes.

3- Barcelona Condominium Association (ñBarcelonaò) hired Defendant Associated Property Management, Inc. (ñAPMò) to manage the property and collect the HOA fees.

4- Defendant APM is a business entity with its principal place of business in the State of Arizona.

5- Plaintiffs are residents of the State of Illinois.

6- Defendant Maxwell & Morgan (ñM&Mò) is a law firm with its principal office in the State of Arizona.

7- Defendant M&M is a ñdebt collector,ò as that term is defined under the Fair Debt Collection Practices Act.

8- Defendant M&M uses instruments of interstate commerce for a principal purpose of its business, which is the collection of debts.

9- Defendant M&M regularly attempts to collects, or attempts to collect, debts that are owed to others.

**FACTS COMMON TO ALL COUNTS**

3- In 2016, Barcelona retained Defendant M&M to represent Barcelona in an unrelated action against Plaintiffs.

4- Plaintiffs had incurred an obligation to homeowners association fees (ñHOAò) to Barcelona for the months of October through December 2016 (the ñDebtò).

5- On December 5, 2016, there was a hearing in a Maricopa County court that addressed, in part, the Debt.

6- At the above-referenced hearing, Defendant M&M represented to the court that Defendant APM had not received payment for the Debt.

7- At the hearing, Plaintiffs represented to the court and to Defendants that payment had been sent but agreed that, if the payments could not be located, Plaintiffs would stop payment

on the three checks (##s 4323, 4292, and 4311), hereinafter the ñCancelled Checks,ò and send a replacement check.

8- On or around December 9, 2016, Plaintiffs requested Marquette Bank to stop payment on the Cancelled Checks.

9- On or around December 22, 2016, Plaintiffs wrote check # 4346 in the amount of $639.00 (the ñReplacement Checkò).

10- On or around December 28, 2016, Plaintiffs, through counsel, sent a letter to Defendant M&M with the Replacement Check. See relevant portion of the letter below:

> these amounts for 2017 assessments. In addition, please find another check for $639.00 for unit 248's Oct-Dec 2016 assessments. We are tendering this pursuant to Arizona Statute andmy client asks that the payment be applied monthly assessments as detailed above. Please provide us with a ledger once the payment has been properly applied.

11- On or around January 6, 2017, the Replacement Check was honored by Marquette Bank, thereby extinguishing the Debt.

12- In or around March 2017, Defendant APM deposited one of the Cancelled Checks (#4323) but, due to the stop payment, it was returned without being honored.

13- On or around March 20, 2017, Defendant M&M sent a letter to Plaintiffs to collect on the cancelled check that was returned without being honored (the ñLetterò).

14- In the Letter, Defendant M&M sought to collect an additional $200 for collection costs and ñprotest fees.ò

15- At the time Defendant M&M sent the Letter, Defendant M&M had received the Replacement Check.

16- At the time Defendant M&M sent the Letter, Defendant M&M had given the Defendant APM.

17- At the time Defendant M&M sent the Letter, Defendants M&M and APM knew that Plaintiffs had satisfied the Debt, and that the Debt no longer existed.

18- In the Letter, Defendant M&M threatened that the Debt could increase two-fold unless it was paid within 12 days.

19- In the Letter, Defendant M&M threatened to increase the Debt with attorneysô fees and costs unless it was paid within 12 days.

20- Defendants damaged Plaintiffs.

21- Defendant M&M violated the FDCPA.

**COUNT I – VIOLATIONS OF THE FDCPA**

22- Plaintiffs incorporate all the allegations and statements made above as if reiterated herein.

23- Defendant M&M violated 15 USC § 1692e by engaging in false, deceptive, or misleading methods to collect a debt.

**COUNT II – VIOLATIONS OF THE FDCPA**

24- Plaintiffs incorporate all the allegations and statements made above as if reiterated herein.

25- Defendant M&M violated 15 USC § 1692e(2) by misrepresenting the character, amount, and/or legal status of the Debt.

**COUNT III – VIOLATIONS OF THE FDCPA**

26- Plaintiffs incorporate all the allegations and statements made above as if reiterated herein.

27- Defendant M&M violated 15 USC § 1692e(5) by threatening to take action that cannot be legally taken.

**COUNT IV – VIOLATIONS OF THE FDCPA**

28- Plaintiffs incorporate all the allegations and statements made above as if reiterated herein.

29- Defendant M&M violated 15 USC § 1692e(10) by using false representations and/or deceptive means to collect, or attempt to collect, the Debt.

## COUNT V– VIOLATIONS OF THE FDCPA

30- Plaintiffs incorporate all the allegations and statements made above as if reiterated herein.

31- Defendant M&M violated 15 USC § 1692f by engaging in unfair and/or unconscionable means to collect, or attempt to collect, the Debt.

## COUNT VI– VIOLATIONS OF THE FDCPA

32- Plaintiffs incorporate all the allegations and statements made above as if reiterated herein.

33- Defendant M&M violated 15 USC § 1692f(1) by attempting to collect charges that are not authorized by law.

## COUNT VII– NEGLIGENCE

34- Plaintiffs incorporate all the allegations and statements made above as if reiterated herein.

35- Defendant APM had a duty to collect and process the HOA fees for Barcelona.

36- Pursuant to Arizona Statute 33-1256(j), Defendant APM had a statutory duty to apply the Replacement Check to the assessments for October 2016 through December 2016, as instructed by Plaintiffs in the December 28, 2016 letter.

37- Defendant APM breached their duties by failing to properly account for the Cancelled Checks, and the Replacement check.

38- Defendant APM breached their statutory duties by failing to apply the Replacement Check as instructed by Plaintiffs.

39- As a direct and proximate cause of Defendant APMὸs breach, Plaintiffs were the victims of illegal collection practices by Defendant M&M.

40- As a direct and proximate cause of Defendant APMὸs breach, Plaintiffs had their rights under the FDCPA violated.

41- As a direct and proximate cause of Defendant APMὸs negligence, Plaintiffs suffered anxiety, distress, and loss of peace of mind.

42- As a direct and proximate cause of Defendant APMôs negligence, Plaintiffs had to retain an attorney to prevent Defendants from causing further damage.

**COUNT VIII– INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

43- Plaintiffs incorporate all the allegations and statements made above as if reiterated herein.

44- During the hearing on December 5, 2016, Defendant APM represented to Plaintiffs that it had not received the monthly assessments due for October, November, and December 2016.

45- During the hearing on December 5, 2016, Plaintiffs represented that, if the checks could not be found, they would stop payment and issue a Replacement Check.

46- Upon information and belief, on or around December 13, 2016, Defendant APM received one of the missing checks.

47- Upon receiving one of the missing checks, Defendant APM never communicated the receipt of the check to Plaintiffs.

48- On or around December 28, 2016, Plaintiff mailed the Replacement Check to Defendant APM.

49- On or around January 6, 2017, Defendant APM received the Replacement Check.

50- Upon receiving the Replacement Check, Defendant APM never communicated to Plaintiffs that it had received one of the missing checks on December 13, 2016; instead, on or around January 6, 2017, it deposited the Replacement Check.

51- Defendant APM intentionally applied the Replacement Check to charges other than the assessments for the months of October through December 2016, in direct contradiction to Plaintiffs specific instructions.

52- In March 2017, despite having received and deposited the Replacement Check, Defendant APM deposited one of the missing checks but, due to a stopped payment order, the check was returned.

53- Instead of investigating the circumstances behind the stop payment order, Defendant APM placed the dishonored check with Defendant M&M for collection.

54- At the time Defendant APM placed the check for collection, Defendant APM knew of the missing checks.

55- At the time Defendant APM placed the check for collection, Defendant APM knew that Plaintiffs had issued a Replacement Check.

56- At the time Defendant APM placed the check for collection, Defendant APM knew that the Replacement Check had been honored by the Bank.

57- At the time Defendant APM placed the check for collection, Defendant APM knew that Plaintiffs did not owe the December 2016 assessments.

58- In light of its knowledge, by placing the check for collection, Defendant APM acted with such grossly recklessness towards Plaintiffs that it is reasonable to conclude that Defendant APMҁs intent was to cause emotional distress to Plaintiffs by having an attorney contact them, and threaten to charge Plaintiffs with additional fees.

59- Defendant APMҁs actions were extreme and outrageous. Defendant APM had been engaged to manage the finances of Plaintiffs condominium units, not to extort additional funds from them.

## JURY DEMAND

60- Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

61- Plaintiffs pray for the following relief:

a. Judgment against Defendant M&M for Plaintiffsô actual damages, as determined at trial, suffered as a direct and proximate result Defendantôs violations of the Fair Debt Collection Practices Act, pursuant to 15 U.S.C. §1692k(a)(1);

b. Judgment against Defendant M&M for $2,000 in statutory damages for Defendantôs violations of the Fair Debt Collection Practices Act, pursuant to 15 U.S.C. §1692k(a)(2)(A);

c. Judgment against Defendant M& M for Plaintiffsô reasonable attorneysô fees and costs incurred in this action, pursuant to 15 U.S.C. §1692k(a)(3);

d. Judgment against Defendant APM for $30,000 in general damages;

e. Judgment against Defendant APM for $50,000 in punitive damages; and

f. Any other legal and/or equitable relief as the Court deems appropriate.

RESPECTFULLY SUBMITTED,

Meier LLC

By: */s/ Richard J. Meier*
Richard J. Meier, Esq.
401 N. Michigan Avenue, Suite 1200
Chicago, IL 60611
Tel: 312-242-1849
Fax: 312-242-1841
richard@meierllc.com
*One of the Attorneys for Plaintiffs*